IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
AT JACKSON, TENNESSEE

**NATIONAL LABOR RELATIONS BOARD**,

    Applicant,

v.                                                                            13-00010

**NPC INTERNATIONAL, INC., d/b/a Pizza Hut,**

    Respondent.

**ORDER DENYING MOTION TO DISMISS FOR LACK OF SUBJECT MATTER
JURISDICTION DUE TO MOOTNESS**

On December 17, 2013, the National Labor Relations Board ("N.L.R.B.") applied to this Court for an order enforcing a subpoena duces tecum under Section 11(2) of the National Labor Relations Act ("the Act"). 29 U.S.C. §§ 151-169 (2015). (Docket Entry ("D.E.") 1.) The subpoena arises from a pending unfair labor practice proceeding related to Tiffney Penley. On April 22, 2014, Respondent, NPC International ("NPC"), moved to dismiss the application for lack of subject matter jurisdiction. (D.E. 16.) NPC alleged that an April 3, 2014 workers' compensation settlement agreement between NPC and Penley now renders moot the N.L.R.B.'s proceedings as related to her, and, by extension, to the application for subpoena enforcement. (D.E. 16-1.)

*I. Legal Standard*

The N.L.R.B. is authorized to issue subpoenas related "to any matter under investigation or in question." 29 U.S.C. § 161(1). In the case of a refusal to obey such a subpoena, the Board can petition the appropriate United States District Court for aid in compelling the production of

the documents sought. 29 U.S.C. § 161(2). When considering the ultimate issue of whether to grant an application to enforce a subpoena, "[i]f the District Judge is convinced that the matter under investigation is within the jurisdiction of the Board and that the evidence subpoenaed is related to that matter and is described with 'sufficient particularity,' an order requiring compliance with the subpoena is appropriate." *N.L.R.B. v. ITT Telecommunications*, 415 F.2d 768, 769 (6th Cir. 1969) (citing *Cudahy Packing Co. v. N.L.R.B.*, 117 F.2d 692 (10th Cir. 1941)); *see also N.L.R.B. v. Martins Ferry Hosp. Ass'n*, 649 F.2d 445, 448 (6th Cir. 1981); *N.L.R.B. v. Rohlen*, 385 F.2d 52, 55-56 (7th Cir. 1967) ("The essential requirement for both the issuance and enforcement of a Board subpoena is that the production of the evidence or the giving of the testimony called for by the subpoena must relate to a matter under investigation or in question.").

The Act grants the N.L.R.B. jurisdiction over unfair labor practices cases that affect commerce, 29 U.S.C. § 160(a), and the Board "may exercise the full extent of its statutory jurisdiction in any case in which it has jurisdiction under the [Act]." 51A C.J.S. Labor Relations § 710 (2015); *see also N.L.R.B. v. Customer Control, Inc.*, 309 F.2d 150, 151 (2d Cir. 1962); *N.L.R.B. v. W. B. Jones Lumber Co.*, 245 F.2d 388, 390 (9th Cir. 1957). Mindful of this framework, the exercise of jurisdiction by the Applicant is within its administrative discretion and will be reviewed by a court for an abuse of discretion. *See Glen Manor Home for Jewish Aged v. N.L.R.B.*, 474 F.2d 1145, 1149 (6th Cir. 1973).

*II. Facts Alleged*

The following facts were adduced from the pleadings. On March 29, 2013, Attorney Gordon E. Jackson filed a charge with the N.L.R.B. on behalf of Ashley Lewis and Tiffney Penley. The charge alleged,

> The Employer constructively and retaliatorily discharged Ashley Lewis by changing her work schedule upon learning that Lewis had filed a collective action

lawsuit seeking to redress the wage claims of herself and other employees under federal wage & hour laws. The Employer further failed to properly process the workers' compensation claim of employee Tiffney Penley in retaliation for her participation in the same lawsuit and has subjected her to an unti[mely] and unwarranted investigation of alleged wrongdoing while she is on workers compensation leave.

(D.E. 1 at 7.)

On June 20, 2013, the Board issued a subpoena duces tecum requesting that Troy Baxter, NPC Human Resource Leader, and Tamala Gilbert-Harris of Gallagher Bassett Services appear before her on July 9, 2013, and provide the following:

> 1. All documents Respondent submitted to and received from the Tennessee Department of Labor and Workforce Development regarding the workers' compensation benefit claim of NPC International, Inc. employee Tiffney Penley.
>
> 2. All documents reflecting the investigation of Tiffney Penley's workers' compensation claim and all findings and determinations made during the course of the investigation.
>
> 3. All documents reflecting communications relating in any way to Tiffney Penley's workers' compensation claim.
>
> 4. All documents relating to the February 14, 2013 release by Jeffrey M. Sorenson, MD authorizing Tiffney Penley to return to work without restrictions.
>
> 5. All documents that discuss or refer to Dr. Sorenson's medical release of Tiffney Penley.

(*Id.* at 11-15.)

On July 1, 2013, pursuant to N.L.R.B. regulations, NPC petitioned the Board to revoke or modify the subpoena on various grounds. (*Id.* at 23.) On October 25, 2013, the Board denied Respondent's petition. (*Id.* at 4.) On December 17, 2013, the N.L.R.B applied to this Court for enforcement of the subpoena. (*Id.*) On February 4, 2014, NPC filed its response in opposition to the application. (D.E. 12.)

On April 3, 2014, while this enforcement action was pending, NPC and Penley entered into an agreement settling Penley's workers' compensation claim. (D.E. 16-3.) The settlement agreement included a release

> from any and all liability, under the terms and provisions of the Workers' Compensation Law of the State of Tennessee, at common law or otherwise, as a result of or in any way connected with or growing out of the Employee's accident and injuries of described above, and disabilities resulting from or to result therefrom, whether known or unknown.

(*Id.* at ¶ 13.) The Davidson County, Tennessee Circuit Court approved the agreement. (*Id.*)

### III. Analysis

Respondent alleges that the underlying N.L.R.B. investigation has been rendered moot by the settlement agreement, whereby Tiffney Penley released NPC from all legal claims related to her workers' compensation claim in exchange for a monetary amount. In support, NPC cites the Tennessee Workers' Compensation Act ("TWCA"), Tenn. Code Ann. §§ 50-6-101 to -921, and three cases, all based on state law claims, *Brunet v. City of Columbus*, 1 F.3d 390, 399 (6th Cir. 1993); *Gates Rubber Co. v. Cantrell*, 678 So. 2d 754 (Ala. 1996); and *Clanton v. Cain-Sloan Co.*, 677 S.W.2d 441, 445 (Tenn. 1984). The TWCA creates the workers' compensation system in Tennessee; it addresses neither investigations by the N.L.R.B. nor administrative subpoenas. Likewise, the cited cases do not support NPC's contention that the doctrine of mootness can be applied to administrative investigations and that the application for enforcement or the underlying investigation is now moot.

In *Clanton*, the Tennessee Supreme Court examined the question of whether an exception to the employment-at-will doctrine "should be recognized where the cause of the discharge is the employee's exercise of rights under the workers' compensation laws." *Clanton*, 677 S.W.2d at 443. The court found that discharging an employee for exercising her legal rights under the

TWCA allowed employers to circumvent the intent of the law and held the cause of action for retaliatory discharge necessary to carry out the intention of the legislature in creating the workers' compensation scheme. *Id.* at 444-45. *Clanton* did not deal with federal labor laws and did not in any way touch on Applicant's jurisdiction. Thus, *Clanton* is not helpful to the Respondent.

The *Gates* court inquired whether a previously executed workers' compensation settlement agreement barred an employee's state-law claim for retaliatory discharge. *Gates*, 678 So. 2d at 754. The Alabama Supreme Court found that, in accordance with Alabama case law, the claim was barred under the terms of the settlement agreement. *Id.* Alabama law, at most, could be persuasive authority in this Court; however, the instant case deals with different bodies of law, procedural postures, and policy considerations. Accordingly, *Gates* is not on point.

Finally, *Brunet* dealt with a class-action lawsuit brought by male applicants to the City of Columbus Fire Department who challenged the institution of an affirmative action hiring plan benefiting female applicants. *Brunet*, 1 F.3d at 390. The Sixth Circuit addressed whether the lawsuit became moot when two of the named plaintiffs entered into the Columbus Fire Department recruitment class. *Id.* The court stated:

> Special mootness rules exist for class actions. Once a class is certified, the mooting of the named plaintiff's claim does not moot the action, the court continues to have jurisdiction to hear the merits of the action if a controversy between any class member and the defendant exists. Where, on the other hand, the named plaintiff's claim becomes moot before certification, dismissal of the action is required.

*Id*. at 399. Although Tiffney Penley is currently engaged in a class action lawsuit against NPC related to alleged wage violations, the instant case is an application for enforcement of a subpoena related to an administrative investigation. It is only tangentially connected to the class action. Therefore, the facts and law in *Brunet* are not germane, and Respondent has not pointed

5

to any case, statute, or regulation indicating that mootness is an appropriate defense to an application for enforcement of an administrative subpoena.

The N.L.R.B. argues that the concept of mootness is not applicable at this point. It avers that, at this stage in the proceedings, the relevant inquiry is solely whether unfair labor practices have been committed and argues that it should be allowed to fully develop the facts and determine what relief can be and should be ordered. *See N.L.R.B. v. Seven-Up Bottling Co. of Miami*, 344 U.S. 344, 346 (1953) (The Act "charges the [N.L.R.B.] with the task of devising remedies to effectuate the policies of the Act. . . . [This] power, which is a broad discretionary one, is for the Board to wield, not for the courts."). The Court agrees. In fact, the Second Circuit has held that when a district court considers an application for enforcement of a subpoena, "[n]o defense relating to the merits of the administrative proceedings can be raised, nor need the agency even make any showing of probable cause to believe the law has been violated." *N.L.R.B. v. C.C.C. Assocs., Inc.*, 306 F.2d 534, 538 (2d Cir. 1962). Accordingly, the Court is unconvinced that mootness based upon a workers' compensation settlement is a theory applicable to the facts of this matter and declines to apply it to this case.

Furthermore, even if mootness were an appropriate concept at this point, a private party is in no position to control the actions of a federal regulatory body, and, thus, cannot render moot an administrative investigation by settling a claim. *C.f. N.L.R.B. v. Strickland*, 220 F. Supp. 661, 664 (W.D. Tenn. 1962) *aff'd*, 321 F.2d 811 (6th Cir. 1963) ("Inasmuch as the purpose of the Act is to promote harmony with respect to labor relations, the [N.L.R.B.] cannot be prevented from making an orderly and thorough investigation of an unfair labor practice complaint because one party or the other to the dispute, the employer or employees, has pending civil litigation growing out of the dispute."). Moreover, the fact that present circumstances have been altered does not

render moot an investigation into the occurrence of unfair labor practices. *See id.* at 664-65 (explaining that, although the circumstances had changed and the complained of activity was no longer occurring, "this would not make moot the issues raised by the unfair labor practice complaint").

Were the opposite true, and a company was able to foreclose the possibility of an investigation simply by settling with an employee, the purpose of the Act and the Board would be undermined. The American Law Report on this topic sums up the policy considerations at play:

> [T]he jurisdiction of the [N.L.R.B.] cannot be blocked or completely cut off by the private agreement of the parties, because often in such matters there are circumstances and pressures exerted during the making of the agreement [that] are contrary to the public interest. Such circumstances and pressures are precisely what the Board was designed to prevent. Ousting the Board of jurisdiction by agreement would have the effect of defeating the purpose for which the Board was established, where one of the parties to the agreement was subject to great economic pressure. It has been said that the Board was designed to prevent any unfair economic pressure or expedient arrangements condoning unfair labor practices.

6 A.L.R. Fed. 272 (2015) (originally published in 1971). Thus, the subject of the Applicant's investigation cannot be rendered moot because a private settlement agreement has been reached between NPC and the Penley.

Finally, it should be noted that making the complaining employee "whole" is not the only remedy available to the Applicant. NPC argues that Penley's remedies were cut off by the settlement agreement, and she, in effect, has already been made whole. Even if the settlement agreement were to limit the possible remedies available to Penley through the Board, the N.L.R.B. enjoys broad authority to fashion remedies necessary to address any given violation of labor laws. *See N. L. R. B. v. Gissel Packing Co.*, 395 U.S. 575, 613 (1969); *Adair Standish Corp. v. N.L.R.B.*, 912 F.2d 854, 860 (6th Cir. 1990). Those remedies are not limited to making

7

the complaining employee whole. Accordingly, even if Penley were foreclosed from receiving relief from the Applicant, it would still be in the public interest that the Board be allowed to continue its investigation.

The Respondent, in order to obtain relief, had the burden of showing that the N.L.R.B. abused its discretion in issuing the subpoena because the private settlement agreement rendered the Board's investigation moot. NPC did not meet that burden and cannot rely on the settlement agreement as a shield from an administrative investigation into the allegations of unfair labor practices.

*IV. Conclusion*

For the reasons discussed herein, NPC's motion to dismiss for lack of subject matter jurisdiction due to mootness is DENIED.

IT IS SO ORDERED this 22nd day of December 2015.

s/ J. DANIEL BREEN
CHIEF UNITED STATES DISTRICT JUDGE