IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

NATIONAL LABOR RELATIONS BOARD,

    Applicant,

v.                                                                                              13-0010

NPC INTERNATIONAL, INC., d/b/a Pizza Hut,

    Respondent.

**ORDER OVERRULING RESPONDENT'S OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER ON THE MOTION TO STRIKE,
OVERRULING IN PART, SUSTAINING IN PART, AND HOLDING IN ABEYANCE IN PART RESPONDENT'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON THE APPLICATION TO ENFORCE SUBPOENA,
AND
ORDERING RESPONDENT TO PRODUCE AN AMENDED PRIVILEGE LOG**

On December 17, 2013, Applicant, the National Labor Relations Board ("NLRB" or "Board") applied to this Court for an order enforcing a subpoena duces tecum under Section 11(2) of the National Labor Relations Act ("the Act"). 29 U.S.C. §§ 151-169 (2015). (Docket Entry ("D.E.") 1.) The subpoena is related to a pending unfair labor practice proceeding concerning Tiffney Penley. On February 4, 2014, Respondent, NPC International ("NPC"), filed a response in opposition to the enforcement application, (D.E. 12), to which the NLRB replied on February 24, 2014 (D.E. 13). Thereafter, NPC moved to strike Applicant's reply. (D.E. 14.) The motion for an order enforcing a subpoena duces tecum was referred to the magistrate judge for a report and recommendation and/or determination on December 29, 2013, (D.E. 6), and the motion to strike was referred to the magistrate judge for determination on December 29, 2015

(D.E. 23). On February 9, 2016, United States Magistrate Judge Edward G. Bryant entered an order denying NPC's motion to strike and granting the NLRB's application to enforce the subpoena and its request for attorney's fees. (D.E. 24.) NPC subsequently submitted an emergency motion to stay Judge Bryant's order, (D.E. 25), which this Court granted on February 19, 2016 (D.E. 26). NPC then filed objections to the magistrate judge's decision, (D.E. 27), which are presently before the Court for review.

## I. BACKGROUND

The following facts were adduced from the pleadings. On March 29, 2013, Attorney Gordon E. Jackson filed a charge with the NLRB on behalf of Ashley Lewis and Tiffney Penley. The charge alleged that

> [t]he Employer constructively and retaliatorily discharged Ashley Lewis by changing her work schedule upon learning that Lewis had filed a collective action lawsuit seeking to redress the wage claims of herself and other employees under federal wage & hour laws. The Employer further failed to properly process the workers' compensation claim of employee Tiffney Penley in retaliation for her participation in the same lawsuit and has subjected her to an unti[mely] and unwarranted investigation of alleged wrongdoing while she is on workers' compensation leave.

(D.E. 1 at PageID 7.)

On June 20, 2013, the Board issued a subpoena duces tecum requesting that Troy Baxter, NPC Human Resource Leader,[1] appear before it on July 9, 2013, and provide the following:

> 1. All documents Respondent submitted to or received from the Tennessee Department of Labor and Workforce Development regarding the workers' compensation benefit claim of NPC International, Inc. employee Tiffney Penley.

---

[1] A separate subpoena ordered Tamala Gilbert-Harris, a claims representative at Gallagher Bassett Services, to appear before the Board. NPC's motion to revoke pertained to that subpoena as well, but the Board ruled that Respondent did not have standing to file a petition to revoke a subpoena on behalf of a third party. (D.E. 1 at PageID 38-39.) The present enforcement action concerns only the subpoena issued to Troy Baxter as a representative of NPC. (*See id.* at PageID 1-5.)

> 2. All documents reflecting the investigation of Tiffney Penley's workers' compensation claim and all findings and determinations made during the course of the investigation.
>
> 3. All documents reflecting communications relating in any way to Tiffney Penley's workers' compensation claim.
>
> 4. All documents relating to the February 14, 2013 release by Jeffrey M. Sorenson, MD authorizing Tiffney Penley to return to work without restrictions.
>
> 5. All documents that discuss or refer to Sorenson's medical release of Tiffney Penley.

(D.E. 1 at PageID 11-15.) Paragraph ten of the subpoena directed that "if any document responsive to any request herein was withheld from production on the asserted ground that it is privileged, identify and describe the following: (a) author; (b) recipient; (c) date of the original document; (d) subject matter of the document; and (e) nature of privilege asserted." (*Id.* at PageID 13-14.)

On July 1, 2013, pursuant to NLRB regulations, NPC petitioned the Board to revoke or modify the subpoena on various grounds. (D.E. 1 at PageID 23.) Respondent asserted that the subpoena sought to "improperly enjoin [NPC's] ability to investigate or otherwise defend/prosecute Tiffney Penley's state court claim . . . ." (*Id.* at PageID 26.) NPC requested that the unfair labor practice charge be held in abeyance pending the outcome of the underlying workers' compensation claim, arguing that "[t]o do otherwise[] would deprive NPC of its First [A]mendment right to have state law questions decided by the state judicial system." (*Id.*)

NPC also requested revocation on the ground that the subpoena was overly broad. (D.E. 1 at PageID 27.) Respondent pointed to language in the subpoena requesting "all documents," which NPC contended would lead to an "exhaustive search" that was "illogical" and "contrary to

the NLRB's mandates and the Federal Rules of Civil Procedure." (*Id.*) Respondent averred that the subpoena "improperly [sought] the production of documents and materials that are protected under the attorney-client privilege and work product doctrine[]," specifically requests 2-5 (*Id.*) Respondent did not offer any details about the documents it withheld on these bases. NPC further stated that the Board had not shown that the documents requested were relevant to any issue in dispute. (*Id.*) Finally, Respondent contended that request 4—records from Penley's doctor releasing her to full duty—asked for documents that were outside NPC's control. (*Id.*)

On October 25, 2013, the Board denied Respondent's petition to revoke. (D.E. 1 at PageID 38.) It concluded that the subpoena sought relevant information for the matter under investigation and "describe[d] with sufficient particularity the evidence sought . . . ." (*Id.*) The Board noted that NPC had "failed to establish any other legal basis for revoking the subpoena." (*Id.*)

On November 12, 2013, counsel for NPC emailed Applicant's counsel and informed her that Respondent would not produce any additional documents. (D.E. 1 at PageID 40.) Thereafter, the NLRB applied to this Court seeking an order enforcing the subpoena. (*Id.*) Applicant requested that this Court: (1) issue an order directing NPC to show cause why an order should not issue directing compliance with the subpoena, (2) issue an order requiring Respondent to obey the subpoena duces tecum and provide the requested documents within ten days of entry thereof, and (3) award costs and attorney's fees to the Board incurred in initiating and prosecuting the subpoena enforcement action. (*Id.* at PageID 5.)

## II. STANDARD OF REVIEW

Twenty-eight U.S.C. § 636(b)(1)(A) permits a district judge to, subject to certain exceptions, "designate a magistrate judge to hear and determine any pretrial matter pending before the court." Furthermore, "[a] magistrate judge may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States." 28 U.S.C. § 636(b)(3). A district court judge may also refer "any motion excepted in subparagraph (A)" to the magistrate judge, who may "submit . . . proposed findings of fact and recommendations for the disposition." 28 U.S.C. § 636(b)(1)(B).

As an initial matter, NPC asserts that the magistrate judge exceeded his authority by entering an order regarding enforcement of the subpoena, rather than a report and recommendation.[2] To resolve this issue, the Court must determine whether an application to enforce a subpoena duces tecum is dispositive. Many courts who have considered this question have answered in the affirmative. Those courts reasoned that, although a motion to quash a subpoena is often a non-dispositive matter, where a court's decision disposes of the entire matter at issue, it is more properly characterized as dispositive and therefore subject to de novo review. *Luppino v. Mercedes-Benz Fin. Servs. USA, LLC*, No. 13-50212, 2013 WL 1844075, at *3 (E.D. Mich. Apr. 11, 2013) (citing *Hartford Fire Ins. Co., Inc. v. Transgroup Express, Inc.*, No. 09 C 3473, 2009 WL 2916832, at *1 (N.D. Ill. Sept. 1, 2009)). The Court finds this reasoning persuasive. Once an order is entered in this matter, the entirety of the dispute that is before this Court will be resolved. Therefore, the application to enforce the subpoena is dispositive, and the magistrate judge only had authority to render a report and recommendation. In accordance with the standards of review outlined below, the Court will construe Judge Bryant's decision relating

---
[2] Respondent does not contend that the order on the motion to strike was improper.

to the subpoena enforcement application as a recommendation which will be reviewed de novo and will apply the clearly erroneous or contrary to law standard with respect to its denial of the motion to strike.

In accordance with Local Rule 72.1(g) and Federal Rule of Civil Procedure 72(a), Respondent filed a written objection to the magistrate judge's order on the motion to strike. Upon a timely objection to a magistrate judge's order, the district judge is instructed to "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see* 28 U.S.C. § 636(b)(1)(A). "The clearly erroneous standard applies only to factual findings made by the Magistrate Judge, while his legal conclusions will be reviewed under the more lenient contrary to law standard." *E.E.O.C. v. Burlington N. & Santa Fe Ry. Co.*, 621 F. Supp. 2d 603, 605 (W.D. Tenn. 2009) (quoting *Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D. Ohio 1992), *aff'd*, 19 F.3d 1432 (6th Cir. 1994)) (internal quotation marks omitted). A factual finding is "'clearly erroneous' only when the reviewing court is left with the definite and firm conviction that a mistake has been made." *King v. Banks*, No. 2:10-cv-852, 2010 WL 4384248, at *1 (S.D. Ohio Oct. 28, 2010). A legal conclusion is contrary to law when it "contradict[s] or ignore[s] applicable precepts of law, as found in the Constitution, statutes, or case precedent." *Steede v. Gen. Motors, L.L.C.*, No. 11-2351-STA-dkv, 2012 WL 2089755, at *2 (W.D. Tenn. June 8, 2012) (quoting *Doe v. Aramark Educ. Res., Inc.*, 206 F.R.D. 459, 461 (M.D. Tenn. 2002)); *see also* 32 Am. Jur. 2d *Federal Courts* § 143 (2008) ("A magistrate judge's order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure."); 12 Charles Alan Wright et al., *Federal Practice and Procedure: Civil 2d* § 3069

(2d ed. 1997) ("In sum, it is extremely difficult to justify alteration of the magistrate judge's nondispositive actions by the district judge.")

NPC also filed objections to Judge Bryant's recommendation that the subpoena be enforced. In ruling on objections to a report and recommendation, the Court is to make a de novo determination as to those portions of the magistrate judge's report and recommendation to which objections have been made. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). Under this type of review, the district judge may accept, reject, or modify the recommended disposition. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

### III. ANALYSIS

A. *Motion to Strike*

First, the Court reviews the magistrate judge's order denying Respondent's motion to strike arguments regarding waiver contained in Applicant's reply. The Court's review of this non-dispositive matter focuses on whether the factual findings were clearly erroneous or the legal conclusions contrary to law. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).

After the Board presented an application to enforce the subpoena duces tecum, NPC filed a response in opposition, arguing that the subpoena requested documents that are protected from disclosure by the attorney-client privilege and/or the work-product doctrine; it also produced a privilege log for the first time.[3] (D.E. 12 at PageID 74.) Subsequently, Applicant filed a reply in which it responded to the attorney-client privilege and work-product protection claims proffered

---

[3] The response included an additional argument that the subpoena violated NPC's First Amendment rights because it interfered with its defense of an ongoing workers' compensation claim in state court. (D.E. 12 at PageID 74.) As Respondent acknowledged in its objections to the magistrate judge's order, that workers' compensation case has been settled, and the First Amendment argument is thus moot. (D.E. 27 at PageID 466, n.5.) Accordingly, this Court considers only the privilege and work-product arguments.

by NPC. (D.E. 13.) The Board's argument was that NPC had waived these protections because it failed to produce a privilege log at the administrative level. (*Id.* at PageID 292.) The NLRB admitted that NPC had attached a privilege log to its response to the subpoena enforcement application, (D.E. 12-3), but pointed out that the log was produced seven months after the subpoena was issued, even though the subpoena specifically directed NPC to produce a log at that time if it withheld any responsive documents on the basis of attorney-client privilege or the work-product doctrine. (D.E. 13 at PageID 292.) Applicant further contended that the privilege log NPC did produce was insufficient, characterizing it as containing "cursory and conclusory descriptions," which provided "insufficient bases to ascertain whether each element of the attorney-client and work-product privileges ha[d] been met." (*Id.* at PageID 293.)

Thereafter, NPC filed a motion to strike Applicant's reply, arguing that it inappropriately raised new arguments and evidence. (D.E. 14 at PageID 300.) According to Respondent, it refused to produce certain documents based on attorney-client privilege and the work-product doctrine as noted in its motion to revoke, but "the NLRB General Counsel's Office *never* raised the issue of waiver before the Board." (D.E. 14-1 at PageID 302-03.) After the Board denied NPC's motion to revoke, Respondent spoke with counsel for the NLRB, who asked whether Respondent planned to provide a privilege log. (*Id.* at PageID 303.) According to NPC, Applicant's counsel stated that, whether a log was produced or not, the Board would adhere to its position that the documents were not privileged and that NPC would be required to provide them.[4] (*Id.*)

---

[4] In its response to NPC's objections to Judge Bryant's report, the Board states that this "characterization of its contact with Board staff is disingenuous." (D.E. 32 at PageID 514.)

In his order, the magistrate judge found that the Board's arguments about privilege and waiver were "counterpoints in response to Respondent's argument of privilege and [were] properly raised," and he denied the motion to strike. (D.E. 24.) In its objection, NPC avers that the magistrate judge's "factual finding that these were 'counterpoints' is clearly erroneous, and his legal conclusions in this regard are contrary to law." (D.E. 27 at PageID at 467.) Respondent asserts that "[a]t no stage in the proceedings before this Court or . . . the Board itself had the NLRB raised these arguments. (*Id.* at PageID 466.)

NPC is correct that the NLRB knew the *facts* surrounding Respondent's failure to produce a privilege log at the administrative level, but it did not know the *arguments* that NPC would rely upon when opposing the subpoena enforcement action in district court. A moving party does not waive reply arguments merely because it fails to accurately predict the contentions of a responding party. The "nature and purpose" of a reply are to respond to the nonmoving party's arguments. *See Rose v. Liberty Life Assurance Co. of Boston*, No. 3:15-CV-28-DJH-CHL, 2015 WL 10002923, at *2 (W.D. Ky. Oct. 19, 2015). As the NLRB points out, it could not have addressed NPC's privilege assertions in its application because Respondent did not submit a privilege log until it filed its response to the application. Further, NPC admits that it opposed the subpoena before the Board on several grounds, including a First Amendment claim, that it was overly broad, and that it requested irrelevant materials. Other than a single citation to a case that stands for the general proposition that arguments should not be raised for the first time in a reply brief, NPC has not pointed to any authority that supports its position with respect to this objection. (D.E. 27 at 466-67.) Accordingly, this Court finds that Judge Bryant's factual findings are supported by the record and that his application of the law is sound. The Board's

9

arguments regarding waiver and failure to exhaust are "entirely consistent with the proper purpose of a reply brief, to address the opposing party's arguments raised in a response brief." *See Liberty Legal Found. v. Nat'l Democratic Party of the USA, Inc.*, 875 F. Supp. 2d 791, 797-98 (W.D. Tenn. 2012). NPC's objections on this ground are OVERRULED.

B. *Enforcement of Subpoena Duces Tecum*

As discussed above, this Court will construe the magistrate judge's ruling on the subpoena enforcement application as a report and recommendation that is subject to de novo review. The magistrate judge recommended that the NLRB's application to enforce the subpoena be granted. The judge found that Penley's workers' compensation claim was within the Board's jurisdiction and that the evidence subpoenaed related to that matter and was described with "sufficient particularly." (D.E. 24 at PageID 449). Additionally, the court concluded that Respondent's privilege argument was "too little too late" and had been waived because NPC failed to produce a privilege log at the administrative level. (*Id.*) The judge noted that Respondent did not produce a log until it filed a response to the Board's application to enforce the subpoena in district court and that the log that was produced was insufficient. (*Id.*) With respect to the work product claims, he concluded that "the subpoenaed documents [were] relevant to assessing whether Respondent ha[d] taken baseless and retaliatory action against Penley's workers' compensation claim." (*Id.* at PageID 449.)

The court rejected NPC's reliance on *N.L.R.B. v. Detroit Newspapers*, 185 F.3d 602 (6th Cir. 1999), to support its argument that it was not required to present privilege claims to the Board. The magistrate judge noted that in *Detroit Newspapers*, the issue was whether a federal district court could delegate the in camera review of potentially privileged documents to an

administrative law judge. (D.E. 24 at PageID 448.) Judge Bryant found the present case distinguishable, and pointed out that "Board adjudicators are authorized to make rulings on questions of privilege." (*Id.*) (*citing NLRB v. Interbake Foods, LLC*, 637 F.3d 492, 498 (4th Cir. 2011)). NPC objects to the magistrate judge's recommendation on several grounds, which the Court will address in turn.

1. Waiver

First, NPC contends that it had "no obligation to produce a privilege log at the agency level," that the exhaustion doctrine does not apply, and that supplying a log to the Board would have been futile. (D.E. 27 at PageID 467.) Respondent alleges that the statutes and regulations which empower the Board to issue subpoenas do not invest it with the authority to require the "creation" of any document, including a privilege log. (*Id.* at PageID 468.) NPC avers that, because the NLRB lacks authority in this respect, "there can be no waiver of the privileges for failure to create [a log]." (D.E. 27 at PageID 469.) Respondent maintains that the district court, not an administrative board, has exclusive authority to decide issues related to privilege. Similarly, it argues that producing a privilege log earlier would have been "futile." (*Id.* at PageID 474.)

According to NPC, only Article III judges have the power to decide issues relating to privilege. (D.E. 27 at PageID 469.) In support of this argument, Respondent cites *N.L.R.B. v. Detroit Newspapers*, 185 F.3d 602 (6th Cir. 1999). In that case, the Board issued three subpoenas duces tecum which sought information and documents relating to a union strike of Detroit Newspapers. *Id.* at 604. Detroit Newspapers filed a petition to revoke the subpoena, asserting that the materials sought were protected by attorney-client privilege or the work-

11

product doctrine. *Id.* An administrative law judge ("ALJ") denied the petition to revoke and required production of the requested materials. *Id.* Detroit Newspapers refused to produce the requested documents for in camera review by the ALJ, insisting that a federal district judge review the documents to determine whether they were protected. *Id.* The NLRB subsequently filed a subpoena enforcement action in district court. *Id.*

The district court concluded that the privilege objections should be determined by the ALJ. *Detroit Newspapers*, 185 F.3d at 604. The court found that allowing the ALJ to conduct an in camera review of the subject documents would afford "an adequate and meaningful opportunity to raise any privilege claims." *Id.* Following that decision, Detroit Newspapers appealed. *Id.*

On appeal, the Sixth Circuit considered, as a matter of first impression, whether a district court judge "had the discretion to refuse to review [allegedly privileged] documents to determine whether they were privileged, and to delegate that decision making responsibility to the ALJ hearing the underlying labor dispute." *Detroit Newspapers*, 185 F.3d at 604. Ultimately, the court held that "the district court, not the ALJ, must determine whether any privileges protecte[d] the documents from production." *Id.* at 606. The court based this conclusion on the fact that Congress had "specifically reserved to the federal courts the authority to provide for enforcement of subpoenas." *Id.* at 605. Thus, the district court did "not have the discretion to delegate an Article III responsibility to an Article [I] judge." *Id.* at 606.

Although NPC is correct that the ultimate authority to assess claims of privilege in the context of a subpoena enforcement action lies with the district court, in this Court's view, its reading of *Detroit Newspapers* is overly broad. Respondent posits that it had no responsibility to

12

produce a privilege log before the Board. Thus, reasons NPC, it cannot have waived its right to seek protection based on attorney-client privilege and work-product doctrine in district court for failure to exhaust the issue at the administrative level. But, the Sixth Circuit did not hold that a mere cursory assertion of privilege at the administrative level is all that is required of a party opposing the production of properly subpoenaed documents. It also did not state that a party can defy an administrative agency's request to provide a sufficient description of withheld documents so that the Board can make an initial assessment of the claimed protections. Rather, the court concluded that, if an assertion of privilege is challenged and the production of documents for in camera review is necessary, only a district court can compel the production of those documents, conduct the relevant review, and make an ultimate determination on privilege. *See* 185 F.3d at 606.

Respondent takes issue with the fact that the Board did not explicitly address its privilege and work product claims in ruling on the motion to revoke. Based on this, it contends that producing a log would have been futile. However, the NLRB cannot be faulted for failing to take seriously Respondent's claims of attorney-client privilege and work-product protection. NPC ignored the subpoena's explicit directive to provide specific information about each document withheld. NPC's actions have essentially forced this matter into district court. While the district court does maintain exclusive authority to enforce a subpoena, and to render a binding decision regarding privilege, had Respondent cooperated at the Board level, the Court's review of this matter might not have been necessary. This is because,

> [i]nherent in the Board's authority to issue subpoenas, to revoke subpoenas, to examine witnesses, and to receive evidence in accordance with the Federal Rules of Evidence is the authority to make substantive rulings on the grounds for objection to subpoenas and to the admissibility of evidence at the administrative

13

> hearing. And within this scope, Board adjudicators are authorized to make rulings on questions of privilege, as they have been doing for decades.

*N.L.R.B. v. Interbake Foods, Inc.*, 637 F.3d 492, 498 (4th Cir. 2011) (internal citations omitted). Indeed, "[i]n most cases, an ALJ's rulings on privilege do not require court enforcement, because the parties either comply voluntarily with the ALJ's rulings, or the ALJ's rulings are made without the need for inspection of the underlying documents." *Id.* (internal citations omitted). Adopting NPC's argument in this respect would essentially lead to a per se rule that respondents before the NLRB can invoke the attorney-client privilege and work-product protection without having to substantively address the documents withheld. That would frustrate the parties' ability to cooperate and come to an agreement with respect to challenged documents in an administrative proceeding, forcing the matter into district court in every instance. NPC seemingly takes for granted that the parties may be able to confer and reach a mutually agreeable resolution without the aid of the court.

In sum, the Court does not condone NPC's complete failure to comply with reasonable requests from the Board to explain its basis for not producing documents it claims are protected by the attorney-client privilege or work-product doctrine. Nevertheless, given this Court's authority to make an ultimate determination on these issues, Respondent's reliance on these protections will not be treated as waived for failure to submit a privilege log to the Board. *See E.E.O.C. v. Lutheran Soc. Servs.*, 186 F.3d 959, 965 (D.C. Cir. 1999) (declining to waive privilege argument where party challenging production of documents did not raise issue before administrative agency). NPC's objection to the magistrate judge's recommendation that the privilege and work-product protection be waived is SUSTAINED.

2. Adequacy of Privilege Log

Next, the Court must determine whether the privilege log submitted by NPC is sufficient. Applicant contends that the descriptions of documents included in the log are inadequate to evaluate whether the materials are protected by attorney-client privilege or the work-product doctrine. NPC counters that in addition to the descriptions in the log, counsel for Respondent filed an affidavit attesting that the documents in the privilege log "relate to the workers['] compensation claims made by Tiffney Penley, to NLRB charges filed on behalf of Tiffney Penley . . . , and to other litigation in this Court between Penley . . . and NPC." (D.E. 14-2 at PageID 309 & D.E. 27 at PageID 476.) Respondent avers that, taken together, these documents establish both protections.

The party asserting a privilege has the initial burden of establishing that the communication was related to legal matters. *In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 450-51 (6th Cir. 1983).

> The elements of the attorney-client privilege are as follows: (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived.

*Reed v. Baxter*, 134 F.3d 351, 355-56 (6th Cir. 1998) (citing *Fausek v. White*, 965 F.2d 126, 129 (6th Cir. 1992) and *United States v. Goldfarb*, 328 F.2d 280, 281 (6th Cir. 1964)). "Because it is in derogation of the search for truth, the privilege is to be narrowly construed." *United States v. Clem*, 201 F.3d 373, at *2 (6th Cir. 2000) (unpublished table decision) (citing *In re Grand Jury Investigation No. 83-2-35*, 723 F.2d at 451).

Similarly, "[t]he work-product doctrine protects an attorney's trial preparation materials from discovery to preserve the integrity of the adversarial process." *In re Prof'ls Direct Ins. Co.*, 578 F.3d 432, 438 (6th Cir. 2009) (citing *Hickman v. Taylor*, 329 U.S. 495, 510-14 (1947)). Federal Rule of Civil Procedure 26(b)(3) protects (1) "documents and tangible things" that are (2) "prepared in anticipation of litigation or for trial" (3) "by or for another party or its representative." A document is prepared in anticipation of litigation if the document was prepared "because of" a party's subjective anticipation of litigation and that subjective anticipation was objectively reasonable. *Id.* at 439 (citing *United States v. Roxworthy*, 457 F.3d 590, 594 (6th Cir. 2006)). A document is not protected work-product if it was prepared solely for an ordinary business purpose, but material prepared in anticipation of litigation that also serves a business purpose is protected if its litigation purpose predominates. *Id.* As with the attorney-client privilege, the party asserting that the materials are protected work-product carries the burden of proving that "anticipated litigation was the 'driving force behind the preparation of each requested document.'" *Id.* (quoting *Roxworthy*, 457 F.3d at 595).

> Rule 26(b)(5) of the Federal Rules of Civil Procedure provides that
>
> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
> (i) expressly make the claim; and
> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

The party invoking the privilege must "produc[e] evidence sufficient to show the existence of a relationship giving rise to the privilege. The burden of production is not satisfied by mere conclusive or *ipsa dixit* assertions, for any such rule would foreclose meaningful inquiry into the

16

existence of the privilege." *Am. Health Sys., Inc. v. Liberty Health Sys.*, Civ. A. No. 90-3112, 1991 WL 42310, at *5 (E.D. Pa. Mar. 26, 1991) (internal citations omitted); *see also Case v. Unified Sch. Dist. #233*, No. Civ. A. 94-2100-GTV, 1995 WL 358198, at *3 (D. Kan. June 2, 1995) (same). "[D]escribing a document as 'legal advice' or 'work product' is not the same as *establishing* that the documents are immune from discovery." *Coltec Indus., Inc. v. Am. Motorists Ins. Co.*, 197 F.R.D. 368, 373 (N.D. Ill. 2000). In short, generalized assertions that a communication is privileged or that a document is protected work-product will not suffice.

Turning now to a review of the log submitted by NPC, the Court agrees that it is insufficient. The descriptions provided by Respondent leave much to be desired. The privilege log lists 107 documents, all of which are emails. (D.E. 12-3.) The log lists the date the emails were sent, the author/sender and recipient, the bates stamp, the subject, and the privilege or protection claimed. (*Id.*) Some examples of the descriptions provided in the "subject" category are "Dr.'s notes," "Penley," "meeting on voids," "NPC," "subpoena," "employee history," "release," and "workman's comp." (*Id.*) This is only a sample of the "subjects" provided, but the remaining descriptions are equally thin. These explanations are wholly inadequate to enable the Court to determine whether the items were properly withheld. *See Ypsilanti Cmty. Utils. Auth. v. Meadwestvaco Air Sys. LLC*, No. 07-CV-15280, 2009 WL 3614997, at *3 (E.D. Mich. Oct. 27, 2009) (characterizing privilege log descriptions such as "[s]ignatures," and "Life Insurance for Joe Lackner" as "completely insufficient"). Further, the affidavit submitted by NPC's counsel, which again asserts, without meaningful explanation, that the documents were properly withheld, does not remedy the inadequacy of the log. *See In re Veiga*, 746 F. Supp. 2d 27, 43 (D.D.C. 2010) ("[T]he [party asserting the privilege] offers nothing in addition to an

empty invocation of the relevant legal standard, asserted upon its own *ipse dixit* that these communications reflect attorney mental impressions and legal conclusions in connection with ongoing litigations.")

When a party supplies an inadequate privilege log, there are four possible remedies. The court can (1) provide the party another chance to submit a more detailed log; (2) deem the inadequate log a waiver of the privilege; (3) conduct an in camera inspection of the withheld documents; or (4) conduct an in camera inspection of a subset of the withheld documents. *N.L.R.B. v. Jackson Hosp. Corp.*, 257 F.R.D. 302, 307 (D.D.C. 2009). "[D]eeming the log a waiver is the most draconian but the least consumptive of judicial resources while *in camera* inspection of all of the withheld documents is the most forgiving but the most consumptive of judicial resources." *Id.* Courts have generally found that waiver is appropriate where "unjustified delay, inexcusable conduct, or bad faith are present." *Johnson v. Ford Motor Co.*, 309 F.R.D. 226, 235 (S.D.W. Va. 2015) (citing *Westfield Ins. Co. v. Carpenter Reclamation, Inc.*, 301 F.R.D. 235, 247-48 (S.D.W. Va. 2014)).

Although NPC should have known that its conclusory document descriptions were inadequate to allow the NLRB and the Court to assess its claims of attorney-client privilege and work-product protection, the Court does not find that this is an appropriate case in which to treat the protections as waived. There is no evidence that Respondent acted in bad faith. With respect to the timing of the log, as discussed above, the Court has already rejected NPC's contention that it had no duty to produce a privilege log at the administrative level. However, Respondent's belief in that respect appears grounded in its good faith reliance on its interpretation of *Detroit*

18

*Newspapers*. Rather, the Court will require NPC to submit a supplemental privilege log that remedies the shortcomings addressed in this order.

Accordingly, NPC is hereby ORDERED to file an amended privilege log with the Court within ten days of entry of this order, which lists the withheld documents along with descriptions sufficient to establish the elements of attorney-client privilege and/or protected work-product as required by the applicable law. After the amended log is filed, the NLRB will have an opportunity to review the descriptions of the documents and determine whether they will challenge any of the withheld documents. Within fourteen days after the amended log is filed, Applicant may file a motion to challenge the privileges or protections claimed in the log and to compel the production of specific documents. *See Ypsilanti Cmty. Utils. Auth.*, 2009 WL 3614997, at *4 (following similar procedure). Of course, with a more descriptive log, the NLRB may also determine that continuing to seek enforcement of the subpoena as to the documents at issue is no longer proper. In either case, the Court will hold in abeyance a final ruling on the subpoena enforcement application pending the parties' action in accordance with this order. Likewise, a ruling on Respondent's objections to Judge Bryant's award of attorney's fees to Applicant will not be considered until a final ruling is issued.

## V. CONCLUSION

Based upon the foregoing and the record as a whole, Respondent's objection to the order on the motion to strike is OVERRULED. NPC's objections to Judge Bryant's recommendation that its privilege and work-product protection arguments be treated as waived are SUSTAINED, but its objection to his finding that the privilege log produced was insufficient is OVERRULED. This Court's ruling on NPC's objections to the magistrate judge's recommendation that the

subpoena duces tecum be enforced is HELD IN ABEYANCE, pending Respondent's filing of an amended privilege log and the NLRB's response in accordance with this order. A determination on the objections to the award of attorney's fees will also be HELD IN ABEYANCE pending a final ruling in this matter.

    **IT IS SO ORDERED** this 16th day of February 2017.

                                           s/ J. DANIEL BREEN  
                                           CHIEF UNITED STATES DISTRICT JUDGE